

**NOT FOR PUBLICATION**\*

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID M. TUTTELMAN, | No. 07-15241 |
| Plaintiff-Appellant, | D.C. No. CV-02-02656-(WHA) |
| v. | |
| CITY OF SAN JOSE, SAN JOSE POLICE OFFICER ANTHONY LUISI, SAN JOSE POLICE OFFICER RONALD BAYS, | MEMORANDUM\* |
| Defendant-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted November 2, 2010
San Francisco, California

Before: GOULD and CALLAHAN, Circuit Judges, and KORMAN,\*\* District Judge.

This is an appeal from a judgment of the United States District Court for the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

1

Northern District of California, entered in favor of San Jose Police Officers Anthony Luisi and Ronald Bays and the City of San Jose, after a jury returned a verdict in favor of the defendants on plaintiff's claims for excessive force, unlawful arrest, and interference with plaintiff's right of free speech. These claims, which invoked 42 U.S.C. § 1983 and Cal. Civil Code § 52.1, arose out of a routine traffic stop, late at night on July 28, 1998.

David Tuttelman, who was driving his pickup truck in San Jose, California, was pulled over by two San Jose police officers, Luisi and Bays, because the license plate on Tuttelman's truck was obstructed and unlit. Once Tuttelman was pulled over, he exited his truck and walked back towards the patrol car. One word led to another and ultimately to an attempted pat-down search by Luisi, followed by a scuffle, which led to Tuttelman's arrest for resisting, delaying, or obstructing a police officer, in violation of Cal. Penal Code § 148. He was later formally charged with that offense and with battery on a police officer, in violation of Cal. Penal Code § 243.

Tuttelman moved successfully to suppress the Officers' testimony concerning both charges on the ground that the attempted pat-down search, which set the subsequent events in motion, was not justified by a reasonable suspicion that Tuttelman was armed and dangerous. A subsequent appeal to the Appellate Department of the Santa Clara County Superior Court resulted in a holding that: (1)

2

the attempted pat-down search was unlawful; (2) Tuttelman could not be prosecuted for either resisting arrest or battery on an officer because Luisi was not *lawfully* performing his duties—a prerequisite for both charges; (3) Tuttelman could be prosecuted for the charge of simple battery, which did not depend on proof that Luisi was lawfully performing his duties; and (4) the testimony of the Officers was not subject to suppression in connection with that charge.

After further proceedings on remand, Tuttelman pleaded guilty to having an obstructed license plate on the night of the incident. Thereafter, he filed the civil rights lawsuit at issue in this case, alleging various causes of action. This appeal followed the entry of a final judgment in favor of the defendants.

In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court observed that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few issues." *Id.* at 751–52. The brief filed by Tuttelman in this appeal takes the opposite course. Instead of winnowing out weaker arguments on appeal, Tuttelman challenges virtually every pre-trial, trial, and post-trial ruling made by the district judge.

## I.

Tuttelman's appeal principally challenges the district court's grant of the

Officers motion for summary judgment on the cause of action arising out of the attempted pat-down search. We reject this challenge.

First, as a threshold matter, we reject Tuttelman's contention that the Officers are collaterally estopped from arguing that the attempted pat-down was supported by reasonable suspicion. Under California law, "the party against whom preclusion is sought must be in privity with the party to the former proceeding." *People v. Garcia*, 141 P.3d 197, 201 (Cal. 2006). Indeed, *Lynch v. Glass*, 119 Cal. Rptr. 139 (Cal. Ct. App. 1975), one of the leading cases, held that "[d]ue process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the losing party in the first action." *Id.* at 142; *see also Clemmer v. Hartford Ins. Co.*, 587 P.2d 1098, 1102 (Cal. 1978) ("[C]ollateral estoppel may be applied only if due process requirements are satisfied."). The Supreme Court has similarly so held. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

In *Davis v. Eide*, 439 F.2d 1077 (9th Cir. 1971), we held that two Los Angeles police officers, who were defendants in a subsequent federal civil action, were not in privity with the prosecution in a prior state criminal action; because "[t]he defendants were city police officers not directly employed by the state [of California]," who "had

4

no measure of control whatsoever over the criminal proceeding and no direct individual personal interest in its outcome[,] . . . there was no privity sufficient to invoke the doctrine of collateral estoppel." *Id.* at 1078. These factors are consistent with the factors that California courts have since recognized as the essence of privity under California law. *See, e.g.*, *Clemmer*, 587 P.2d at 1102; *Lynch*, 119 Cal. Rptr. at 141–42.

Neither of the Officers had an identity or community of interest with, or were represented by, the Santa Clara County District Attorney's Office, which "represents the State of California in the name of the 'People' at criminal prosecutions." *People v. Sims*, 651 P.2d 321, 333 (Cal. 1982) (citing Cal. Penal Code § 684). None of the Officers' personal interests were at stake in the suppression hearing. Obviously, neither of the Officers had a proprietary or financial interest in or was in control of the criminal prosecution of Tuttelman. Not only did the Officers and the City not join in that action, they would not have been able to do so. Indeed, Bays was not even called to testify at the suppression hearing. Under these circumstances, the Officers were not in privity with the Santa Clara County District Attorney.

The only case Tuttelman cites for the proposition that both the Officers and the City of San Jose are in privity with the prosecution in the prior state court case is *Miller v. Superior Court*, 214 Cal. Rptr. 125 (Cal. Ct. App. 1985). *Miller* was a civil

5

lawsuit for damages against a Los Angeles Police Department officer who had previously been convicted of having raped the plaintiff-victim. *Id.* at 126. Because the officer was a party to that proceeding, he was precluded from relitigating the jury's verdict finding him guilty. Although the City of Los Angeles was not a party to the criminal proceeding, the *Miller* Court held that it was collaterally estopped from litigating the issue whether the officer had raped the plaintiff-victim. *Id.* at 130–31.

In so holding, however, *Miller* conflated the doctrines of judicial and collateral estoppel. The latter doctrine is based on privity "between the party to be estopped *and the unsuccessful party in the prior litigation . . . .*" *Sims*, 651 P.2d at 333 (quoting *Clemmer*, 587 P.2d at 1102) (emphasis added). *Miller* found that the "City [of Los Angeles] was in privity with the People of the State of California," 214 Cal. Rptr. at 129, represented by the district attorney, who was the *successful* party in the criminal prosecution.

We are not aware of any authority supporting the proposition that, even assuming the existence of privity, the doctrine of collateral estoppel bars the successful party in a prior action from relitigating the issue on which he was successful. The estoppel that *Miller* applied could only be the doctrine of *judicial* estoppel. As Professors Wright, Miller, and Cooper observe:

> Judicial estoppel has little to do with preclusion by judgment, even when it requires reliance by a court on a

6

prior inconsistent position. Courts do not relish the prospect that an adept litigant may succeed in proving a proposition in one action, and then succeed in proving the opposite in a second. . . . The theories of judicial estoppel that reduce these risks do not draw directly from the fact of adjudication. Instead, they focus on the fact of inconsistency itself.

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477 (2d ed. 2002); *see also Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004) ("Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." (internal quotation marks omitted)).

By treating the City of Los Angeles and the People of the State of California as one, *Miller* was effectively invoking the doctrine of judicial estoppel to prevent the City from taking a position in the civil case that was inconsistent with the position that the State of California, in the name of the People, took in the criminal case. Whether this was a proper application of the doctrine of judicial estoppel is a matter of California law that we need not resolve here. This case does not call for the application of that doctrine and, even if it did, "[f]ederal law governs the application of judicial estoppel in federal courts." *Johnson v. Oregon*, 141 F.3d 1361, 1364 (9th Cir. 1998).

We do note, however, that the considerations of policy that *Miller* also invoked

to justify its holding are not applicable here. Specifically, *Miller* was concerned that permitting the relitigation of the issue of rape would expose the plaintiff-victim to vexatious litigation, reopen the question of the officer's guilt, and destroy the finality of a criminal prosecution concluded against the defendant by a jury beyond a reasonable doubt. *See Miller*, 214 Cal. Rptr. at 131. But none of those prospects loomed over Tuttelman's civil lawsuit in the district court. The only criminal prosecution and guilty verdict in this case were against Tuttelman.

Finally, our review of the record satisfies us that the attempted pat-down search was justified by reasonable suspicion and did not violate the Fourth Amendment. "To justify a patdown of the driver or a passenger during a traffic stop[,] . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 129 S. Ct. 781, 784 (2009). The determination of reasonable suspicion involves consideration of "the totality of the circumstances surrounding the stop," *United States v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010) (internal quotation marks omitted), and "must be based on commonsense judgments and inferences about human behavior," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Considering the *totality* of the circumstances—instead of analyzing them piecemeal, as the state court did—Luisi's attempted pat-down search of Tuttelman was reasonable. The Officers stopped Tuttelman at approximately 11:00 p.m.

Tuttelman immediately exited his pickup truck and walked towards the rear of his vehicle; was agitated and loud; failed to produce his drivers license; walked past Bays and began to return to his truck; failed to comply with Bays's instruction to stop walking away; and had a discernible bulge in his left front pants pocket.[3]

Ample precedent supports a finding of reasonable suspicion here. *See, e.g., Wardlow*, 528 U.S. at 124 ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1022 (9th Cir. 2009) (stating that "an officer's observation of a visible bulge in an individual's clothing" supports reasonable suspicion); *United States v. Brown*, 273 F.3d 747, 748 (7th Cir. 2001) ("A nighttime traffic stop, especially in an area where crime is not a stranger, is more fraught with potential danger to an officer than would be a stop during the light of day."); *United States v. Baker*, 78 F.3d 135, 137 (4th Cir. 1996) ("Based on the inordinate risk of danger to law enforcement officers during traffic stops, observing a bulge that could be made by a weapon in a suspect's clothing reasonably warrants a belief that the suspect is potentially dangerous, even if the suspect was stopped only for a minor violation."); *United States v. Holifield*, 956 F.2d

---

[3] Tuttelman argues that "Luisi's suppression hearing testimony reveals an understanding [at the time of the traffic stop] that the item [creating the bulge in Tuttelman's clothing] was a wallet." Luisi's testimony in fact states that the shape of the bulge, which gave rise in the circumstances to his suspicion that Tuttelman might be armed, "could be consistent with a wallet gun," the possession of which is specifically prohibited by Cal. Penal Code § 12020(a)(1).

9

665, 667 (7th Cir. 1992) ("The officers could have had a reasonable belief that [the suspect] presented a danger to themselves and others. Their belief was not based upon a 'hunch' but upon [the suspect's] boisterous, aggressive approach to the squad car.").

## II.

Tuttelman challenges the district court's grant of summary judgment to the City of San Jose. But Tuttelman does not have a claim against the City because *respondeat superior* is not a theory of municipal liability under § 1983. *See Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 691 (1978). Instead, "[t]o establish [municipal] liability [under 42 U.S.C. § 1983], [the plaintiff] must show that (1) [he] was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Mabe v. San Bernardino Cnty., Dept. of Public Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001) (internal quotation marks omitted).

The district court correctly determined that Tuttelman's *Monell* claim was without merit. Tuttelman arguments to the contrary are sufficiently meritless as to obviate the need for additional discussion. Moreover, notwithstanding the fact that the City had previously withdrawn its summary judgment motion, the district court did not abuse its discretion by dismissing the *Monell* claim before trial. The district

10

court warned Tuttelman at two separate pre-trial conferences that his claim against the City would be dismissed unless he articulated a triable *Monell* theory. Indeed, Tuttelman concedes that the arguments his counsel made at the pre-trial conferences on the *Monell* claim "were exactly those he could have made at a hearing on the City's prior summary judgment motion." Under these circumstances, the dismissal of Tuttelman's *Monell* claim was proper. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

## III.

Tuttelman argues that he "is entitled to judgment as a matter of law on his state law section 52.1 claim for unlawful search." This claim is not specifically asserted under the § 52.1 count in his complaint, and Tuttelman admits that he is "rais[ing] the issue for the first time on appeal." The failure to specifically articulate the state law claim for unlawful search in the district court proceedings precludes Tuttelman from raising it on appeal. *See Ohel Rachel Synagogue v. United States*, 482 F.3d 1058, 1060 n.4 (9th Cir. 2007) (declining to remand with leave to amend complaint where plaintiffs "neither relied on this proposed cause of action below nor sought leave of the district court to amend their complaint to add it"). His argument that he should be excused for not having specifically presented his claim to the district court, because he mistakenly believed that it would have been subject to the defense of qualified

11

immunity under California law, is premised upon a simple misreading of the case law he cites. Indeed, the post-judgment case he relies upon for an alleged change in California law on this issue, *Venegas v. Cnty. of Los Angeles*, 63 Cal. Rptr. 3d 741 (Cal. Ct. App. 2007), expressly followed earlier precedents such as *Ogborn v. City of Lancaster*, 124 Cal. Rptr. 2d 238, 246 (Cal. Ct. App. 2002) ("The doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees."). The latter case itself followed earlier cases.

## IV.

Tuttelman argues that the district court should have given jury instructions that the attempted pat-down search was unlawful, and that he had "the right to forcibly resist an unlawful search attempt" incident to a lawful arrest. We reject these arguments because, as we have explained, the attempted pat-down search was lawful.

## V.

Tuttelman also argues that the district court erred by denying his motion for summary judgment on his excessive force claim.[4] Specifically, he argues that the

---

[4] As the Supreme Court recently reinforced, *Ortiz v. Jordan*, 131 S. Ct. 884, 891–92 (2011), we will not review a denial of summary judgment where a genuine dispute of material fact precluded entry of judgment as a matter of law for the movant. Nonetheless, we construe Tuttelman's arguments related to his excessive force claim to raise a "purely legal issue," *id.*, which we may review, *see Banuelos v. Constr. Laborers' Trust Funds for S. Cal.*, 382 F.3d 897, 902 (9th Cir. 2004), and which we must consider regardless in order to address his argument concerning the jury instructions.

12

district court should have assumed that any use of force by the officers was unreasonable as a matter law because Tuttelman's conduct had not created "exigent" circumstances and because the officers failed to consider or avail themselves of "less intrusive alternatives to force." This claim is without merit.

Here, Luisi grasped Tuttelman's right wrist, in anticipation of the attempted pat-down search, only after Tuttelman had refused to comply with Officer Luisi's instructions to put his hands above his head and, instead, kept his hands down at this sides and clenched his fists. This sort of *de minimis* use of force cannot ground an *excessive* force claim under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (internal quotation marks and citation omitted)) ; *United States v. Alverez-Tejeda*, 491 F.3d 1013, 1017 (9th Cir. 2007) ("While the police may not use *excessive* force in conducting a search or seizure, the force here was minimal." (internal citation omitted)).

The cases Tuttelman cites are easily distinguished. Tuttelman's conduct was not analogous to the conduct of either: passive political protesters, "sitting peacefully" and presenting no physical resistance to police, who nonetheless used pepper spray against them, *cf. Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1127 (9th Cir. 2002); or a motorist who informed the officers that he was

13

physically incapable of placing his hands behind his back but was nonetheless slammed onto the hood of his car, *cf. Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir. 2007); or a mentally ill person thirty-feet away from the defendant officer and surrounded by other officers, including a canine team, who was nonetheless shot in the face with a lead-filled beanbag round, *cf. Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001); or a cooperative and calm man, presenting no indication of a concealed weapon, at whose head a police officer pointed his gun when the man approached, *cf. Robinson v. Solano Cnty.*, 278 F.3d 1007, 1010 (9th Cir. 2002).[5]

**AFFIRMED.**

---

[5] We have considered Tuttelman's remaining arguments and find them likewise to be without merit.