[No. D047158. Fourth Dist., Div. One. June 14, 2006.]

JONATHAN O'TOOLE et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COMMUNITY COLLEGE DISTRICT et al., Real Parties in Interest.

[No. D047230. Fourth Dist., Div. One. June 14, 2006.]

SAN DIEGO COMMUNITY COLLEGE DISTRICT et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JONATHAN O'TOOLE et al., Real Parties in Interest.

490

COUNSEL

Law Offices of Peter D. Lepiscopo, Peter D. Lepiscopo and James M. Griffiths for Petitioners in No. D047158 and for Real Parties in Interest in No. D047230.

No appearance for Respondent.

Stutz Artiano Shinoff & Holtz, Ray J. Artiano and Ljubiša Kostić for Real Parties in Interest in No. D047158 and for Petitioners in D047230.

OPINION

HALLER, Acting P. J.—Plaintiffs[1] brought an action against the San Diego Community College District (District) and several law enforcement officers employed by the District,[2] alleging defendants violated plaintiffs' constitutional rights of free speech and assembly by requiring them to obtain a permit before speaking and distributing literature concerning their opposition to abortion. Plaintiffs requested declaratory relief, and sought monetary damages under the Bane Act (Civ. Code, § 52.1) and under the statute imposing governmental liability for breach of a mandatory duty (Gov. Code,[3] § 815.6). One of the plaintiffs (O'Toole) also asserted a false arrest claim. The parties filed cross-summary judgment motions. After the court denied these motions, plaintiffs and defendants each challenged the order by petitioning for a writ of mandate in this court. We consolidated these petitions, and issued an order to show cause.

We conclude the trial court properly denied plaintiffs' summary judgment motion, but should have granted defendants' motion. The undisputed facts show defendants are entitled to statutory immunity under section 820.6, which provides a public employee is not liable for enforcing an allegedly unconstitutional enactment if the "employee acts in good faith, without malice, and under the apparent authority of [the] enactment . . . ." O'Toole's

---

[1] Plaintiffs are Jonathan O'Toole, Michelle Chavez, Jason Conrad, Katherine Ford, Daniel McCullough, and Meghan O'Toole. All further references to O'Toole in this opinion are to Jonathan O'Toole.

[2] Defendant police officers are Sergeant David Vasquez, Officer Kevin Olson, Officer Joel Pabelico, and Officer Albert Abutin. We refer collectively to these officers and the District as defendants.

[3] All further statutory references are to the Government Code unless otherwise specified.

false arrest claim is also unsupported because the undisputed facts show the officers had reasonable cause to arrest O'Toole. Further, as plaintiffs concede, their declaratory relief claim is moot because the District no longer requires an individual to obtain a permit before engaging in free speech activities on campus.

## FACTUAL AND PROCEDURAL BACKGROUND

*Undisputed Facts*

Plaintiffs are members of Survivors of the Abortion Holocaust, a "pro-life" association. At about 11:00 a.m. on February 25, 2003, plaintiffs came to Mesa College intending to educate the public, distribute literature, and display posters relating to their opposition to abortion. Mesa College is one of three colleges within the District. None of the plaintiffs were students at the college.

Plaintiffs arrived at the campus in a vehicle driven by plaintiff Daniel McCullough. After dropping off the other plaintiffs at the campus entrance, McCullough went to park his vehicle in the campus parking lot. The group then walked to the Mesa College cafeteria. Because it was raining heavily, numerous students were gathered underneath the covered walkway near the cafeteria. Several nearby tables contained literature relating to student clubs and organizations.

Plaintiffs set up large graphic posters in front of the cafeteria, and began distributing anti-abortion literature. Many students became upset and began arguing with plaintiffs. Cafeteria workers were concerned and called the campus police. The first responding officer, Lieutenant Jack Doherty, observed that two of the plaintiffs were displaying a large poster of a bloody, dismembered fetus. One of the plaintiffs was engaged in a very loud, heated debate with one or two other persons who appeared to be students. Approximately 20 students were gathered near the plaintiffs who were displaying the poster.

Lieutenant Doherty told the group leader, O'Toole, that Mesa College required a special permit before a person could display posters and hand out literature on campus. O'Toole said he did not have a permit, and was unaware that the group needed a permit. Lieutenant Doherty responded that plaintiffs could obtain a permit at the student affairs office. Plaintiffs (except for McCullough who was still parking the vehicle) then went to the student affairs office. At the time, Mesa College policy required campus police officers to direct any person distributing material without the necessary permit to the student affairs office. Defendant officers were aware of this policy and of the permit requirement.

Several other police officers arrived at the scene, including Sergeant Vasquez, Officer Olson, and Olson's trainee, Officer Pabelico. The students complained to Sergeant Vasquez about plaintiffs' conduct. Sergeant Vasquez believed some of the students were so upset there was a "real possibility" they might attempt to tear plaintiffs' posters or assault one of the plaintiffs. Officers Olson and Pabelico then went to the student affairs office, where they found numerous "angry" and "upset" students.

Inside the student affairs office, Kathy Fennessy, an office staff worker, told plaintiffs they were required to complete an application for a permit and submit their literature for review, and the application could take 10 working days to process. Fennessy said the review could take a shorter time, but Mesa College rules permitted the college to take up to 10 days. Plaintiffs asserted that their rights were being violated and that they had the right to "do whatever they wanted to on a campus." Fennessy responded that the college had the right to impose reasonable time, place, and manner restrictions on free speech rights. O'Toole took the application outside the office, and a few minutes later turned in the completed application.

Meanwhile, Officer Pabelico entered the student affairs office and asked Fennessy for an update on the permit situation. Fennessy responded that plaintiffs did not have a permit and that the permit would not issue at that time. Fennessy said plaintiffs needed the proper paperwork and advised that it would take up to 10 business days to obtain the approval. Fennessy then requested Officers Olson and Pabelico to ask plaintiffs to leave the campus.

To enforce Fennessy's request, Officer Pabelico asked plaintiffs (except for McCullough who had not yet come on the campus) to leave the campus and referred plaintiffs to Penal Code section 626.6, which permits campus personnel to direct a nonstudent to leave the campus if it appears the individual "is committing any act likely to interfere with the peaceful conduct of the activities of the campus" or "has entered the campus . . . for the purpose of committing any such act." (Pen. Code, § 626.6, subd. (a).) Under the express language of Penal Code section 626.6, the officers also instructed plaintiffs not to return for seven days or they could be arrested for reentering the campus. (Pen. Code, § 626.6, subd. (c).) But Officer Pabelico also told plaintiffs they were welcome to return to campus to leaflet and display posters once they obtained a permit.

In response, O'Toole directed the other members of his group to leave the campus, which they did. O'Toole then took his poster and written materials and walked toward the cafeteria, intending to continue his anti-abortion

activities at a designated free speech area. Officers Olson and Pabelico told O'Toole to stop and that if he did not comply, the officers would arrest him under Penal Code section 148 for delaying a police officer in the performance of his duties. O'Toole did not stop. When O'Toole reached an area near the cafeteria, he held a large poster and began handing out literature. The officers believed this activity was improper because O'Toole did not have the required permit.

Officers Olson and Pabelico asked O'Toole to stop this activity several times, and each time O'Toole refused. The officers told O'Toole he needed an approved permit before he could demonstrate. O'Toole responded that he was exercising his freedom of speech. The officers admonished him again, and told him he had a "choice to leave." When O'Toole continued his activities, Officer Olson took O'Toole's posters and literature from him and placed O'Toole's hands behind his back. Officer Abutin assisted Officer Olson, and handcuffed O'Toole. Officer Pabelico then placed O'Toole under arrest for violating Penal Code section 148, believing that O'Toole was "resisting and obstructing [the officers'] attempt to enforce the permit requirement; delaying [the officers] by making [them] pursue O'Toole; and refusing to comply with officer Olson's directive that O'Toole cease the further display of a large poster and leafleting without a permit." (Capitalization omitted.)

Officers Pabelico and Olson then took O'Toole to the campus police station. Once there, the officers prepared a notice to appear which identified violations of Penal Code sections 148, subdivision (a)(1) and 626.6. During this time, Officer Pabelico showed O'Toole a copy of Penal Code section 626.6, which permits college officials to require a nonstudent to leave the campus if it "reasonably appears" the person is "likely to interfere with the peaceful conduct of the activities of the campus."[4] O'Toole read the code section and then directed the officers' attention to subdivision (b), which states "[t]he provisions of this section shall not be utilized to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech

---

[4] Penal Code section 626.6 provides: "(a) If a person who is not a student, officer or employee of a college or university and who is not required by his or her employment to be on the campus [or related facility], enters a campus or facility, and it reasonably appears . . . that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility, or has entered the campus or facility for the purpose of committing any such act, the chief administrative officer or his or her designee may direct the person to leave the campus or facility. If that person fails to do so or if the person willfully and knowingly reenters upon the campus or facility within seven days after being directed to leave, he or she is guilty of a misdemeanor and shall be punished . . . . [¶] . . . [¶] (b) The provisions of this section shall not be utilized to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech or assembly. [¶] (c) When a person is directed to leave pursuant to subdivision (a), the person directing him or her to leave shall inform the person that if he or she reenters the campus or facility within seven days he or she will be guilty of a crime."

or assembly." (Pen. Code, § 626.6, subd. (b).) The officers read this portion of the code section, but did not believe it applied to the situation because O'Toole had not obtained the required permit and because O'Toole had created a disturbance and refused to leave.

Officer Olson then told O'Toole he intended to release him if he was willing to cooperate. But O'Toole "unequivocally indicated he would resume displaying posters and leafleting, and would not leave campus if released." Sergeant Vasquez directed the officers to book O'Toole into county jail. O'Toole stayed in jail for two days. No charges were filed based on the incident.

The District thereafter revised its free speech policy. The new policy eliminated the requirement that a college approve written materials before they are posted or distributed. Under the new policy, "prior permission by way of an application and permit is no longer required at Mesa College (or any other campus within the District) and there is no waiting period." Additionally, the new policy made clear that "[n]o restrictions shall be placed on subject matters, topics or viewpoints expressed in designated free speech areas."

*The Complaint*

Shortly after the District revised its free speech policy, plaintiffs filed a complaint against the District, Sergeant Vasquez, Officer Olson, Officer Pabelico, and Officer Abutin.[5] The complaint contained six causes of action. In the first cause of action, plaintiffs alleged defendants' "enforcement of the prior notice restriction violated the California Bane Act," which provides that a person whose exercise of constitutional rights is interfered with through "threats, intimidation, or coercion" may bring an action for injunctive relief or damages. (Civ. Code, § 52.1, subds. (a) & (b).) In the second cause of action, plaintiffs alleged defendant officers "failed to discharge their mandatory statutory duty, contained in Penal Code section 626.6(b), not to utilize Penal Code section 626.6 to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech or assembly." In the third cause of action, plaintiffs alleged defendants' use of Penal Code section 626.6 to interfere with their free speech rights constituted negligence per se. In the fourth cause of action, plaintiffs sought declaratory relief, seeking an order that the District's permit "restrictions violate plaintiffs' constitutional rights."

---

[5] The complaint also named Lieutenant Doherty (the first responding officer), but plaintiffs later dismissed the complaint as to this officer.

The final two causes of action were brought only by plaintiff O'Toole, and concerned his claims that his arrest and imprisonment were unlawful. In the fifth cause of action, O'Toole alleged defendant officers "knew, or should have known, that they had no basis for the arrest or the imprisonment" and that they "acted without probable, or reasonable, cause to believe that O'Toole committed a crime in their presence." In the sixth cause of action, O'Toole alleged violation of the Bane Act, based on the claimed false arrest and false imprisonment.

*Summary Judgment Motions*

The parties filed cross-summary judgment/summary adjudication motions.

In support of their summary judgment motion, defendants produced the declarations of the individual police officers relating the facts summarized above. Defendants also proffered the declaration of Loretta Adrian, the Mesa College Dean of Student Affairs. She said that in February 2003, it was the "policy and procedure at Mesa College to require the submission of a Special Activities Application prior to the displaying of posters or distribution of literature on campus," and that she was the person responsible for issuing the "Special Activities Permit." Adrian said the purpose of the permit requirement was to coordinate and manage the use of facilities for free speech and political activities, and to record the distributors' identity and the content of the literature if "issues regarding the material arose after the fact." Adrian said she did not "have the discretion to deny an application," and instead her "role was entirely ministerial, i.e., to schedule activities at a time when facilities were available and manage the use of facilities." She said she had never denied a permit application, and that applications were "granted as a matter of course." Although the approval process could take up to 10 days, the average "turn around time was anywhere between [three and five] days." On the day of the incident, Adrian was not in her office or available to review the application.

Defendants also submitted a copy of the District's policy governing the posting and distribution of literature in effect on the date of the incident (Policy No. 3925). Policy No. 3925 contained "[s]tandards for approval" by the student affairs dean for "literature to be posted or distributed."[6] Policy No. 3925 also provided that each campus may impose reasonable and content

---

[6] Those standards were: "2.1 The literature does not advocate the commission of an unlawful act which is imminent or likely to occur at the time. [¶] 2.2 The literature or its distribution on campus in the form of bulletins, circulars, publications, or articles of any character does not impede the orderly conduct of college classes or programs conducted under district auspices. [¶] 2.3. The literature is not profane, vulgar, lewd, indecent or obscene. [¶] 2.4. The literature does not misrepresent the college or District in any way."

neutral "time, place and manner" regulations to prevent "disruption of the orderly conduct of college classes, programs, or services . . . ." To implement these regulations, Mesa College adopted a policy requiring a "Special Activities Permit" before an individual was permitted to distribute or display materials. The permit application stated that "Ten (10) working days are required to process all special activity applications" and that all materials must accompany the application.

Defendants also presented evidence regarding the District's March 2004 amendment to Policy No. 3925, which deleted the permit requirement, directed each college to expand free speech areas, and made clear that the colleges were prohibited from excluding speakers or written materials based on the content of the speech.

Based on this evidence, defendants argued plaintiffs could not recover on their claims because the officers had a valid basis for enforcing the permit requirement; the permit requirement was a constitutional time, place, and manner restriction; defendants did not have a mandatory duty to permit plaintiffs to protest in violation of the permit requirement; the officers did not coerce, threaten, or intimidate plaintiffs; there was a sufficient disturbance caused by plaintiffs' activity to justify the exclusion of plaintiffs from campus under Penal Code section 626.6; and defendants were immune from liability under federal and state immunity principles. With respect to the declaratory relief claim, the District argued the claim was moot because the policy was revised after the incident.

In opposition to defendants' summary judgment motion and in support of their own motion, plaintiffs presented various items of evidence, including their own declarations, defendant officers' deposition testimony, copies of the anti-abortion materials, and a DVD recording of the incident. Plaintiffs agreed the material facts were undisputed, but argued the District's permit requirement was "an unconstitutional prior restraint of speech," and that defendants' enforcement of the permit was based on the content of the speech and the viewpoint of the speakers, and thus constituted an unlawful "heckler's veto." Plaintiffs also argued that defendants could not prevail on their immunity defense because it was undisputed defendants had knowledge of Penal Code section 626.6, subdivision (b)'s free speech provision.

In a tentative ruling, the court declined to grant either summary judgment motion, except for summary adjudication in defendants' favor on the declaratory relief claim. With respect to the declaratory relief claim, the court stated "[i]t is undisputed that the District has revised its permit policy and there is no[] indication that the District will repeat the unconstitutional conduct. Therefore, this claim has become moot . . . ." But the court rejected

defendants' arguments on the remaining claims. Of relevance here, the court found the District did not have a policy requiring a permit or a 10-day waiting period to obtain the permit, and therefore the officers could not have relied on this policy in good faith. With respect to plaintiffs' motion, the court found the undisputed facts supported plaintiffs' claims, but stated "summary judgment is not proper because plaintiffs have failed to present any evidence regarding the[ir] damages."

At the hearing, plaintiffs' counsel agreed the declaratory relief cause of action "is out. That has been resolved." Plaintiffs' counsel also stated that, contrary to the court's statements in the tentative ruling, it was plaintiffs' position that the District and Mesa College had a policy requiring a permit before a person could exercise his or her free speech rights to distribute literature, and plaintiffs have "stipulated" to this fact. But plaintiffs' counsel argued the existence of this policy should not change the court's ruling because "the officers in the District cannot enforce . . . an unconstitutional policy." Plaintiffs' counsel also stated plaintiffs were willing to limit their claim to statutory damages under the Bane Act, which they said totaled $25,000 for each plaintiff.

After considering the arguments, the court issued a final order, denying both summary judgment motions. The court stated the District's prior permit policy was "clearly unconstitutional" and there are triable issues of fact as to whether the campus police officers should have been aware that the permit requirement was unconstitutional. The court also rejected plaintiffs' argument that the court could decide the statutory damages question as a matter of law, stating plaintiffs' notice of motion did not seek a judgment limited to only statutory penalties. The court concluded that because "this is a close decision on an issue with important constitutional ramifications . . . , the court is willing to stay this case in order to permit either party to initiate writ proceedings in the Appellate Court. . . ." Taking this suggestion, each set of parties petitioned for writ of mandate challenging the court's denial of its motion. Defendants contended the court erred in denying their summary judgment motion, whereas plaintiffs challenged only the court's denial of summary adjudication on their Bane Act claim.

## DISCUSSION

### I. *Summary Judgment Review Standards*

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The moving party

bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if this burden is met, the burden of production shifts to the opposing party to make a prima facie showing of a triable issue of material fact. (*Ibid.*)

On appeal from a summary judgment, we review the record de novo, considering all of the evidence presented by the parties except evidence properly excluded by the trial court. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) We are not bound by the court's stated reasons for its summary judgment ruling; rather, we examine the facts before the trial court and then independently determine their effect as a matter of law. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707].) We view the evidence in the light most favorable to the opposing party, liberally construing the opposing party's evidentiary showing while strictly scrutinizing the moving party's showing. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) There is a triable issue of material fact if there is a sufficient showing for a trier of fact to reasonably find in favor of the opposing party. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.)

Under these principles, we analyze the summary judgment record to determine whether plaintiffs or defendants met their burden to present evidence showing they were entitled to judgment as a matter of law on any cause of action, and if so, whether the opposing parties met their burden to show a triable issue of fact on the claim. As we shall explain, we conclude defendants met their burden on each of plaintiffs' claims and plaintiffs did not raise triable issues of fact in response. Thus, defendants are entitled to summary judgment as a matter of law. This conclusion necessarily means the trial court properly denied plaintiffs' summary judgment/summary adjudication motion.

## II. *Bane Act Claim for Enforcement of Permit Requirement*

■ In their first cause of action, plaintiffs alleged defendant police officers violated the Bane Act by enforcing the District's permit requirement. The Bane Act provides a civil remedy for persons whose exercise of constitutional rights has been interfered with by "threats, intimidation, or coercion." (Civ. Code, § 52.1, subd. (a);[7] see *Venegas v. County of Los Angeles*

---

[7] Civil Code section 52.1 provides: "(a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney

(2004) 32 Cal.4th 820, 841–843 [11 Cal.Rptr.3d 692, 87 P.3d 1] (*Venegas*); *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 331 [70 Cal.Rptr.2d 844, 949 P.2d 941].) To obtain relief under Civil Code section 52.1, a plaintiff need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion. (*Venegas, supra,* 32 Cal.4th at pp. 841–843.) A prevailing plaintiff is entitled to statutory damages even if the plaintiff did not suffer any actual damages. (See Civ. Code, §§ 52.1, subd. (b), 52, subds. (a), (b)(2).)

In moving for summary judgment, defendants argued they could not be held liable under the Bane Act because their conduct did not violate plaintiffs' constitutional rights and they did not engage in "threats, intimidation or coercion." They also argued that even assuming plaintiffs could prove these elements, they were immune from liability based on federal and state immunity principles. The trial court rejected each of these arguments, and denied the summary judgment.

In this writ proceeding, defendants reassert each of these arguments. Because the undisputed facts show defendants are immune from suit on this claim, we do not resolve the preliminary issues pertaining to liability under the Bane Act. We assume for purposes of this opinion that the officers' conduct in demanding that plaintiffs leave campus and arresting O'Toole after he refused to discontinue his activities constituted "coercion" within the meaning of Civil Code section 52.1, subdivision (a). (See *Venegas, supra,* 32 Cal.4th at pp. 850–851 (conc. opn. of Baxter, J.) [noting the broad scope of the "threat, intimidation, or coercion" requirement]; *Jones v. Kmart Corp., supra,* 17 Cal.4th at p. 334 [characterizing Civ. Code, § 52.1 as requiring "interference with a legal right, accompanied by a *form of coercion*" (italics added].)

may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated. [¶] (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured." (Civ. Code, § 52.1, subds. (a) & (b).)

 We further assume that the permit policy in effect when the incident occurred imposed an unconstitutional restraint on plaintiffs' free speech rights. A permit requirement for persons seeking to engage in free speech activities is presumed to be unconstitutional. (*Grossman v. City of Portland* (9th Cir. 1994) 33 F.3d 1200, 1204.) This is particularly true for speech on a college campus, which has long been recognized as a "center[] for free intellectual debate." (*Braxton v. Municipal Court* (1973) 10 Cal.3d 138, 149 [109 Cal.Rptr. 897, 514 P.2d 697].) Although this presumption may be overcome by a showing the requirement is content neutral and reflects a reasonable time, place and manner restriction, the courts have generally upheld permit restrictions only if the restriction is narrowly tailored, contains well defined written evaluation standards, and leaves open alternative channels of communication. (See *Thomas v. Chicago Park Dist.* (2002) 534 U.S. 316, 322–323, [151 L.Ed.2d 783, 122 S.Ct. 775]; *U.S. v. Kistner* (8th Cir. 1995) 68 F.3d 218, 221; see generally Langhauser, *Free and Regulated Speech on Campus: Using Forum Analysis for Assessing Facility Use, Speech Zones, and Related Expressive Activity* (2005) 31 J.C. & U.L. 481.) The permit restriction at issue does not appear to have satisfied these factors. The District produced no reasonable basis for requiring a speaker to wait up to 10 days for approval, nor did the District show adequate safeguards to guide the dean of student affairs' discretion or show the permit requirement was narrowly tailored to achieve its legitimate objectives.

 However, the fact that the District's permit requirement may not have met constitutional standards does not necessarily preclude applicable governmental immunities. Defendants moved for summary judgment based on section 820.6, which provides, "[i]f a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable." Under this code section, a police officer is not civilly liable for enforcing an unconstitutional statute or regulation, if the enforcement is in good faith and without malice. (See *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1097 [17 Cal.Rptr.3d 225, 95 P.3d 459]; Cal. Government Tort Liability (Cont.Ed.Bar 4th ed. 2001) § 10.59, p. 629.) The Legislative Committee comment to section 820.6 makes clear the broad scope of this immunity, providing the immunity applies "*even though the employee may have been negligent in his good faith belief that the enactment was constitutional, valid, and applicable.*"[8] (Legis. Com. com., 32 West's Ann. Gov. Code (1995) foll. § 820.6, p. 263, italics added.)

---

[8] In this regard, section 820.6 provides broader protection than the federal immunity doctrine, also relied upon by defendants. Unlike section 820.6, the federal doctrine applies an objective test, shielding a public employee from liability unless " 'it would be clear to a

In their opposition papers, plaintiffs did not assert any argument with respect to the applicability of the section 820.6 immunity. Although we could have considered this a concession on the section 820.6 immunity defense, we specifically gave plaintiffs the opportunity to file supplemental briefing on this issue and gave defendants the opportunity to respond to these additional arguments. After reviewing these supplemental papers and the summary judgment record, we conclude section 820.6 bars liability for the Bane Act claim in this case.

■ First, we reject plaintiffs' argument that section 820.6 is inapplicable to the Bane Act as a matter of law. Although there are no published decisions specifically applying the section 820.6 immunity to the Bane Act, under California law "[i]t is generally recognized that a statutory governmental immunity overrides a statute imposing liability." (*Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 510 [38 Cal.Rptr.2d 489]; see *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 986 [42 Cal.Rptr.2d 842, 897 P.2d 1320]; *Gibson v. County of Riverside* (C.D.Cal. 2002) 181 F.Supp.2d 1057, 1085–1086.) Thus, absent "a clear indication of legislative intent that statutory *immunity* is *withheld or withdrawn*," a specific statutory immunity applies to shield a public employee from liability imposed by a particular statute. (*Caldwell, supra,* 10 Cal.4th at p. 986; *Gates, supra,* 32 Cal.App.4th at p. 510.) On our examination of Civil Code section 52.1, we have found no indication the Legislature intended to create an exception to the general rule. Civil Code section 52.1 contains no indicia reflecting an intent that public employees may be sued despite a statutory immunity that would otherwise apply.

■ In arguing to the contrary, plaintiffs rely on the fact that Civil Code section 52.1 imposes liability "whether or not" the defendant was acting "under color of law." (Civ. Code, § 52.1, subd. (a).) Based on this language, plaintiffs argue the Legislature "waived the immunity of state actors" for Bane Act claims. This argument is unsupported. In the civil rights context, the "under color of law" phrase refers to an individual who is clothed with the authority of the law or the pretense of the law. (*Jones v. Kmart, supra,* 17 Cal.4th at p. 333, fn. 1; *People v. Plesniarski* (1971) 22 Cal.App.3d 108, 114 [99 Cal.Rptr. 196].) Thus, by saying the Bane Act applies to all persons whether or not acting under color of law, the Legislature intended to apply its provisions to private actors as well as public officials (at least to the extent the alleged constitutional violation does not have a state action requirement). (*Jones v. Kmart Corp., supra,* 17 Cal.4th at pp. 333–334, fn. 1.) This

reasonable officer that his conduct was unlawful in the situation he confronted.' " (*Venegas, supra,* 32 Cal.4th at p. 840; see *Menotti v. City of Seattle* (9th Cir. 2005) 409 F.3d 1113, 1152.) We agree with plaintiffs that the federal immunity doctrine is inapplicable to a Bane Act claim. (See *Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 460–461 [124 Cal.Rptr.2d 238].)

extension of liability to private actors does not equate to a legislative intent to create an exception to the general rule that a specific governmental immunity applies to a statute creating liability. To the extent that *Doe v. Petaluma City Sch. Dist.* (N.D.Cal. 1993) 830 F.Supp. 1560 reached a contrary conclusion, we find the court's reasoning to be unpersuasive. (*Id.* at p. 1582.)

We additionally reject plaintiffs' argument that defendants failed to meet their summary judgment burden to show the applicability of section 820.6 to the facts of this case. Section 820.6 is a qualified immunity; it applies when a public employee acts "in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable . . . ." Defendants presented evidence that the District had a policy requiring an individual to obtain a permit before the person could distribute or display written materials, and plaintiffs do not dispute the District's policy was an "enactment" within the meaning of section 820.6.[9] The undisputed facts further showed defendant law enforcement officers took the challenged actions against plaintiffs based on this enactment. The officers had received training about the permit requirement, and had been told that if an individual was distributing literature without a permit, the officers were to direct the individuals to the student affairs office. Consistent with this training, Lieutenant Doherty told plaintiffs to go to the student affairs office. The student affairs office staff then informed plaintiffs that a permit would not be issued that day and asked Officers Olson and Pabelico to order plaintiffs to leave the campus. Based on this instruction and on their understanding of the permit requirement, the officers told plaintiffs they were not permitted to continue their activities and asked them to leave the campus.

This evidence established the officers acted in good faith in enforcing the permit requirement and that the officers did not act with malice. Under section 820.6, "good faith" reflects a subjective intention to act under the authority of the governing enactment, and to enforce or comply with those rules. (See Legis. Com. com., 32 West's Ann. Gov. Code, *supra*, foll. § 820.6, p. 263.) "Malice" within the meaning of the immunity statutes is " 'that attitude or state of mind which actuates the doing of an act for some improper or wrongful motive or purpose.' " (*Laible v. Superior Court* (1984) 157 Cal.App.3d 44, 53 [203 Cal.Rptr. 513].) An officer acts with malice if the officer violates the rights of a person either knowingly (i.e., intentionally) or with reckless disregard of those rights. (See *Harden v. San Francisco Bay Area Rapid Transit Dist.* (1989) 215 Cal.App.3d 7, 15 [263 Cal.Rptr. 549].)

---

[9] At oral argument, plaintiffs' counsel reiterated that plaintiffs were not challenging that the District's policy was an "enactment" within the meaning of this code section. Based on this concession, we assume without deciding, that the policy qualified as an "enactment." We note that at least one court has narrowly defined the term enactment under section 820.6. (See *Hansen v. California Dept. of Corrections* (N.D.Cal. 1996) 920 F.Supp. 1480, 1501–1502; § 810.6.)

Defendants' evidence showed the purpose of the officers' actions was to enforce the District's permit policy, and they acted in accordance with their training and believed their actions were appropriate. This was sufficient to meet their summary judgment burden to show the officers acted in good faith and without malice.

To refute defendants' evidence, plaintiffs rely on the fact that when the officers showed O'Toole a copy of Penal Code section 626.6, O'Toole directed the officers to Penal Code section 626.6, subdivision (b), which states "[t]he provisions of this section shall not be utilized to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech or assembly." Plaintiffs argue this evidence established defendant officers were on notice that their actions were improper. We disagree.

The fact that Penal Code section 626.6, subdivision (b) prohibits a college from violating a person's First Amendment rights does not speak to the issue of the constitutionality of a college's time, place, and manner rule, such as a permit requirement. The existence of a general restriction that a statute should not be read to violate constitutional rights "merely begs the question as to the scope of those constitutional rights." (*Reeves v. Rocklin Unified School Dist.* (2003) 109 Cal.App.4th 652, 660 [135 Cal.Rptr.2d 213].) Directing the officers' attention to a statutory provision stating they could not interfere with plaintiffs' First Amendment rights is not the same as providing the officers with legal authority that the District's specific permit requirement was unconstitutional. The officers stated in their declarations that they did not believe Penal Code section 626.6, subdivision (b) applied because O'Toole had not obtained the required permit and because O'Toole had created a disturbance and refused to leave. Plaintiffs did not produce any evidence showing this belief was in bad faith or otherwise unreasonable. On this record, we reject plaintiffs' argument that the officers' knowledge of Penal Code section 626.6, subdivision (b) shows they acted with malice and in bad faith in enforcing the permit requirement.

Further, the evidence established that O'Toole did not show the officers Penal Code section 626.6, subdivision (b) until *after* they arrested O'Toole for refusing to comply with the officers' orders. Thus, even assuming this subdivision should have put the officers on notice that their actions were unconstitutional, this notice was irrelevant to the officers' actions taken before that time to prevent the protest activities and to request plaintiffs to leave the campus.

Plaintiffs alternatively argue the officers "should have known" the permit requirement was unconstitutional based on federal decisions striking down permit schemes with similar features. (See *Shuttlesworth v. Birmingham*

(1969) 394 U.S. 147 [22 L.Ed.2d 162, 89 S.Ct. 935] [invalidating parade permitting ordinance vesting too much discretion in city commissioner]; *Grossman v. City of Portland, supra,* 33 F.3d 1200 [holding unconstitutional public park permit scheme with seven-day wait period]; *Rosen v. Port of Portland* (9th Cir. 1981) 641 F.2d 1243 [airport one-day advance registration ordinance held unconstitutional].) However, the standard in applying section 820.6 is not whether a reasonable officer would have understood the enactment was unconstitutional. Instead, it is whether defendant officers' reliance on the enactment was in good faith and without malice; the section 820.6 qualified immunity applies even if the officer was "negligent" in his good faith belief in the validity of the enactment.

■ Moreover, even if we were to apply a reasonableness standard, none of the decisions relied upon by plaintiffs concerned a permit scheme that was sufficiently similar to have put the officers on notice that the District's permit requirement was clearly invalid. The constitutionality of a particular permit requirement depends on factors unique to each case, such as the nature of the forum, the scope of the permitting agency's discretion, and the reason for the restriction. (See *Thomas v. Chicago Park Dist., supra,* 534 U.S. at pp. 322–323; *U.S. v. Kistner, supra,* 68 F.3d at p. 221; *United States v. Sued* (S.D.N.Y. 2001) 143 F.Supp.2d 346, 350–353.) The relevant factors in the cited decisions were not so similar that a reasonable police officer would have understood the District's policy to be clearly unconstitutional.

■ The applicability of the section 820.6 immunity in this case is supported by strong public policy reasons. When a public entity has imposed a permit requirement, a police officer should not be expected to second-guess this policy by engaging in a constitutional analysis to predict whether a court will uphold the public entity's restriction. (See *Connecticut ex rel. Blumenthal v. Crotty* (2d Cir. 2003) 346 F.3d 84, 103.) "Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." (*Michigan v. DeFillippo* (1979) 443 U.S. 31, 38 [61 L.Ed.2d 343, 99 S.Ct. 2627].) "[P]olice officers on the street are ordinarily entitled to rely on the assumption that the [entity] [has] considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority." (*Grossman v. City of Portland, supra,* 33 F.3d at p. 1209.)[10]

Plaintiffs alternatively contend the section 820.6 immunity is inapplicable because defendant officers' actions constituted an unconstitutional "heckler's

[10] Of course, no immunity will attach if an officer enforces the policy in a "particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance . . . ." (*Grossman v. City of Portland, supra,* 33 F.3d at p. 1210.) However, plaintiffs do not argue the manner of the enforcement was arbitrary or egregious, and there are no facts in this case supporting this conclusion.

veto." They rely on this court's decision in *San Diego Unified Port Dist. v. U.S. Citizens Patrol* (1998) 63 Cal.App.4th 964 [74 Cal.Rptr.2d 364] (*Citizens Patrol*), a case in which the trial court issued a preliminary injunction restricting activities by two opposing organizations. (*Id.* at pp. 968–969.) The injunction provided that members of these organizations could not come to the airport except for very specific arrival and departure purposes. This court held the injunction was unconstitutional because it was based solely on one group's hostile reaction to the other group's presence at the airport and thus constituted "an impermissible 'heckler's veto' of . . . protected speech." (*Id.* at p. 971.) We stated the " 'First Amendment forbids the government to silence speech based on the reaction of a hostile audience, unless there is a "clear and present danger" of grave and imminent harm.' " (*Id.* at p. 970.)

We agree that a person may not be constitutionally prevented from speaking because of a potential that the audience will disagree with the message and become disruptive. However, the concept of a "heckler's veto" does not render the section 820.6 immunity inapplicable in this case. As discussed, the undisputed evidence showed the officers ordered plaintiffs not to distribute materials on campus *because* plaintiffs were violating the District's permit requirement. Although the evidence showed the officers were also concerned about the extent of the student reactions and may have believed this was a valid basis for preventing plaintiffs from continuing to display and hand out materials, there was no showing the officers took these actions based on the students' reactions. The evidence established the officers were required to enforce the permit requirement regardless whether plaintiffs had caused a disruption. Moreover, there was no evidence the permit requirement was enforced selectively; the evidence showed that anyone wanting to distribute materials needed to obtain a permit. Under these circumstances, the fact that the officers believed plaintiffs could be additionally prevented from continuing the distribution because of the resulting disruption does not negate the application of section 820.6.

We additionally find unavailing plaintiffs' contention that the section 820.6 immunity is inapplicable because defendant officers' challenged acts were not discretionary and they failed to comply with a mandatory duty. First, as discussed in part III below, defendants did not have a mandatory duty to allow plaintiffs to continue their protest without a permit. Additionally, although the discretionary-mandatory distinction is relevant when a defendant asserts immunity based on section 820.2,[11] there is no similar language in

---

[11] Section 820.2 provides: "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

section 820.6 making the discretionary issue relevant. If a specific immunity is applicable, it is unnecessary to consider the issue whether the "general discretionary act immunity" applies. (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 635 [76 Cal.Rptr.2d 489, 957 P.2d 1323].) Plaintiffs' reliance on the Legislative Committee comment following section 820.2 is unhelpful to their position. (Legis. Com. com., 32 West's Ann. Gov. Code, *supra*, foll. § 820.2, pp. 245–246.) This comment merely clarifies that by expressly enacting the various governmental immunities following section 820.2, the Legislature was intending to identify specific instances of discretionary conduct and *preclude* the expansion of liability under those instances. This clarification reflects that the specific immunities were intended to limit rather than expand liability against governmental employees.

 We conclude the undisputed facts show defendant police officers acted in good faith and without malice under the apparent authority of the District's permit policy, and thus defendant officers were immune from liability under section 820.6. Based on this conclusion, we additionally determine plaintiffs' Bane Act claim against the District was without merit. A public entity is not liable for an employee's act if the employee is immune from liability under state law. (§ 815.2, subd. (b); *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 39–40 [37 Cal.Rptr.2d 860].)

### III. *Breach of Mandatory Duty Cause of Action*

In their second cause of action, plaintiffs allege defendants breached their mandatory duty "not to utilize Penal Code section 626.6 to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech or assembly." As the statutory basis for this claim, plaintiffs identified section 815.6, which provides for public entity liability where there is a mandatory duty to protect against the risk of a particular kind.

 However, as with the Bane Act, liability under the mandatory duty statute is subject to immunities provided by a specific statute. (*Creason v. Department of Health Services, supra,* 18 Cal.4th at p. 635.) Because the undisputed facts show defendants are entitled to immunity under section 820.6, plaintiffs cannot recover on their claim for the breach of a mandatory duty under section 815.6.

 We also conclude plaintiffs' section 815.6 mandatory duty claim fails on its merits. Liability under section 815.6 is not invoked unless a mandatory duty is imposed by some other statutory provision. (See *Creason v. Department of Health Services, supra,* 18 Cal.4th at pp. 630–631; *Shamsian v. Department of Corrections* (2006) 136 Cal.App.4th 621, 632 [39 Cal.Rptr.3d

62] (*Shamsian*).) A statute is deemed to impose a mandatory duty on a public official only if the statute affirmatively imposes the duty and provides implementing guidelines. (*Shamsian, supra,* at pp. 632–633; *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1239–1241 [271 Cal.Rptr. 72].) "If a statute does not require that a 'particular action' be taken, . . . section 815.6 does not create the right to sue a public entity." (*Shamsian, supra,* at p. 632.) "Whether a particular statute is intended to impose a mandatory duty . . . is a question of statutory interpretation for the courts." (*Ibid.*)

■ To establish a mandatory duty, plaintiffs rely on Penal Code section 626.6, subdivision (b), which provides, "The provisions of this section shall not be utilized to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech or assembly." Although this subdivision makes clear that Penal Code section 626.6 should not be interpreted to violate the constitutional rights of persons on a college campus, it merely prohibits certain conduct and does not set forth guidelines or rules for schools to follow in implementing an affirmative duty. Thus, it cannot create a mandatory duty within the meaning of section 815.6.[12] (See *Clausing v. San Francisco Unified School Dist., supra,* 221 Cal.App.3d 1224.)

## IV. *False Arrest*

In the complaint, O'Toole alleged false arrest and imprisonment, and sought damages under the Bane Act for defendants' violations of his Fourth Amendment rights, claiming the officers arrested him without probable or reasonable cause. O'Toole alleged "[d]efendants knew, or should have known, that they had no basis for the arrest or the imprisonment," and that defendants "failed to act with due care or good faith, but acted with malice."

■ Defendants moved for summary judgment on the false arrest cause of action on the basis that the undisputed facts showed the officers had reasonable cause to arrest O'Toole for violating Penal Code section 148, subdivision (a) and Penal Code section 626.6, subdivision (a). Under California law, a police officer is not granted governmental immunity for false arrest and imprisonment. (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 752 [63 Cal.Rptr.2d 842, 937 P.2d 273]; see *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 719 [117 Cal.Rptr. 241, 527 P.2d 865].) However, Penal Code section 847, subdivision (b) contains principles that parallel the immunity analysis. Penal Code section 847, subdivision (b) provides "[t]here shall

---

[12] In the third cause of action, plaintiffs alleged defendants were negligent per se because they failed to protect plaintiffs' free speech rights in violation of Penal Code section 626.6, subdivision (b). Because a negligence per se claim against a public entity is the same as a breach of mandatory duty cause of action (see *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, 1185, fn. 3 [89 Cal.Rptr.2d 768]), the claim fails for the same reason.

be no civil liability on the part of . . . any peace officer . . . acting within the scope of his or her authority, for false arrest or false imprisonment . . . [if] [¶] [t]he arrest was lawful, *or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful. . . ."* (Italics added; see *Hamilton v. City of San Diego* (1990) 217 Cal.App.3d 838, 845 [266 Cal.Rptr. 215].) Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. (*People v. Mower* (2002) 28 Cal.4th 457, 473 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) This is an objective standard. (*People v. Adair* (2003) 29 Cal.4th 895, 904–905 [129 Cal.Rptr.2d 799, 62 P.3d 45].) Where the facts are undisputed, the issue of reasonable cause for an arrest is a question of law. (*Giannis v. City and County of San Francisco* (1978) 78 Cal.App.3d 219, 224–225 [144 Cal.Rptr. 145].)

The undisputed facts show that each of the officers who participated in the arrest was aware of the permit requirement, and was aware that O'Toole did not have a permit.[13] The officers had been instructed by campus officials that they must enforce the permit requirement against plaintiffs and the officers reasonably believed the permit policy to be a valid policy. O'Toole admits he unequivocally made clear to the officers that he would continue to violate campus policy by distributing materials without a permit, and repeatedly refused to follow the officers' directions. O'Toole thus delayed and obstructed the police officers in complying with their law enforcement obligations. Under these circumstances, the officers had reasonable cause to believe that O'Toole violated Penal Code section 148, subdivision (a)(1), which provides that "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . shall be punished . . . ." (See *Galvin v. Hay* (9th Cir. 2004) 374 F.3d 739, 758 [under California law, summary judgment properly granted on false arrest claim because defendant officers had "reasonable cause" to believe arrest of protestors was lawful where protestors failed to obtain required permit even though the permit requirement was later ruled to be unconstitutional].)

We also reject plaintiffs' argument that summary judgment on this claim was improper because triable issues of fact existed as to whether the officers had reasonable cause to arrest for a violation of Penal Code section 626.6, subdivision (a). First, we need not reach the Penal Code section 626.6 issue because even assuming the officers did not have a basis to arrest under Penal Code section 626.6, we have already determined they had a reasonable basis to arrest O'Toole under Penal Code section 148 for delaying and obstructing

---

[13] Sergeant Valdez had no involvement in the arrest, so the claim as to him additionally fails for this reason.

the officers' valid law enforcement obligations. Because the issue of reasonable cause is an objective one, there can be no false arrest if the officers had at least one reasonable ground to arrest an individual, even if the officers' additional reasons were not valid.

In any event, the undisputed facts show the officers did have a reasonable basis to conclude that O'Toole was violating Penal Code section 626.6. That code section provides "[i]f a person who is not a student . . . enters a [college] campus . . . , and it reasonably appears . . . that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility, or has entered the campus or facility for the purpose of committing any such act, [campus authorities] may direct the person to leave . . . . [and] [i]f that person fails to do so . . . he or she is guilty of a misdemeanor. . . ." (Pen. Code, § 626.6, subd. (a).)

Defendants presented evidence that plaintiffs' conduct materially disrupted the peaceful conduct of the campus by creating a potential for a violent interaction between plaintiffs and the other students. This evidence showed that some of the students were so upset there was a possibility that the students could assault plaintiffs or tear up plaintiffs' posters. Plaintiffs did not dispute this evidence, or present any contrary evidence. On this record, the officers had a reasonable basis to believe that O'Toole had violated section 626.6, subdivision (a) by interfering with the peaceful conduct of the campus, and that he would continue to do so by refusing to follow the officers' orders to refrain from engaging in his protest activities.

Plaintiffs argue this belief was unreasonable because courts have "clearly established" that peaceful demonstrators cannot constitutionally be excluded from university grounds based on a disruptive audience reaction. To support this argument, plaintiffs rely on the California Supreme Court's decision in *Braxton v. Municipal Court, supra,* 10 Cal.3d 138, and this court's decision in *Citizens Patrol, supra,* 63 Cal.App.4th 964.

In *Braxton,* the court interpreted Penal Code section 626.4, which similarly authorizes the banishment of any person from a campus if " 'such person has willfully disrupted the orderly operation of such campus.' " (*Braxton v. Municipal Court, supra,* 10 Cal.3d at pp. 142–143.) The *Braxton* court held that to avoid constitutional problems of vagueness and overbreadth, "willful disruption" must be interpreted to apply only to incitements to violence or physically disruptive conduct otherwise proscribed by statute. (*Id.* at p. 150.) *Braxton,* however, specifically limited its holding to students, declining to reach the proper interpretation of Penal Code section 626.4 as

applied to nonstudents. (*Braxton,* at p. 144, fn. 2; see *Reeves v. Rocklin Unified School Dist., supra,* 109 Cal.App.4th at p. 660.) Courts in other contexts have similarly recognized that students and nonstudents do not necessarily share the same rights on campus grounds. (See *Widmar v. Vincent* (1981) 454 U.S. 263, 268, fn. 5 [70 L.Ed.2d 440, 102 S.Ct. 269].) *Braxton* thus does not necessarily define the rights held by a nonstudent on a college campus.

*Citizens Patrol, supra,* 63 Cal.App.4th 964 is likewise distinguishable because it concerned the constitutionality of a preliminary injunction, which broadly prohibited all future First Amendment activities of two conflicting groups at the airport. Defendants' challenged conduct in this case concerned the enforcement of a specific violation of the District's permit policy.

Although a lawyer could rely on *Braxton* and *Citizens Patrol* to formulate an argument that arresting a nonstudent on a college campus merely for causing a disruptive audience reaction without stronger evidence of potential physical violence or disruptive conduct violates the individual's free speech rights, we cannot conclude that a reasonable police officer would have, or should have, predicted that a court would reach this conclusion.

## V. *Declaratory Relief*

In their declaratory relief cause of action, plaintiffs sought a declaration that the District's permit restrictions violate plaintiffs' constitutional rights. Defendants moved for summary judgment on this claim, arguing the claim is moot because the District's policies have been revised and no longer impose a permit requirement. At the hearing below, plaintiffs agreed to withdraw this claim, and have not opposed defendants' arguments that they are entitled to summary judgment on the declaratory relief claim.

 Although the trial court did not specifically rule on this claim in its final order, we agree the claim had no merit. The purpose of injunctive relief is to prevent future or threatened harm. (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332 [85 Cal.Rptr.2d 86].) A plaintiff is not entitled to declaratory relief where the defendant has in good faith discontinued the challenged conduct. " '[T]o authorize the issuance of an injunction, it must appear with reasonable certainty that the wrongful acts will be continued or repeated.' [Citation.]" (*Id.* at p. 333.)

## DISPOSITION

We deny the petition of plaintiffs Jonathan O'Toole, Michelle Chavez, Jason Conrad, Katherine Ford, Daniel McCullough, and Meghan O'Toole. We grant the petition of defendants San Diego Community College District, David Vasquez, Kevin Olson, Joel Pabelico, and Albert Abutin. Let a writ of mandate issue directing the superior court to vacate its order denying summary judgment in favor of defendants and to enter summary judgment in defendants' favor. Plaintiffs to bear defendants' costs in this writ proceeding.

McDonald, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied July 6, 2006, and the petition of petitioners Jonathan O'Toole et al., for review by the Supreme Court was denied September 20, 2006, S145351.