**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEMETRIUS HARVEY, | No. 08-17620 |
| Plaintiff - Appellant, | D.C. No. 4:07-cv-01681-SBA |
| v. | |
| CITY OF OAKLAND; et al., | MEMORANDUM [*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted March 8, 2010
San Francisco, California

Before: HALL, NOONAN, and THOMAS, Circuit Judges.

Demetrius Harvey filed this lawsuit against the City of Oakland, Oakland

Police Department, and eight individual police officers based upon his arrest and

detention in connection with the vandalism of two Oakland liquor stores. Harvey

seeks relief under § 1983 for Fourth Amendment violations and under California

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

tort law for false arrest, negligence, and negligent infliction of emotional distress. The district court granted defendants summary judgment on all claims. Harvey timely appealed. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

In analyzing Harvey's § 1983 claims we must determine whether (a) the facts that the plaintiff has alleged make out a constitutional violation, and (b) if so, whether the constitutional right at issue was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. ___, 129 S.Ct. 808, 818 (2009). Because we conclude that defendants did not violate a clearly established right—and are therefore entitled to qualified immunity—we need not address whether Harvey has sufficiently demonstrated a Fourth Amendment violation.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "In the context of a police officer obtaining a warrant, immunity will be lost only where the warrant application is so lacking in indicia of probable cause as to render official

2

belief in the existence unreasonable." *Mill v. Graves*, 930 F.2d 729, 731 (9th Cir. 1991). If reasonable minds could differ as to the existence of probable cause, a magistrate's determination that there was probable cause usually establishes that an officer's belief was objectively reasonable. *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008). "It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present . . . In such cases those officials should not be held personally liable." *Rodis v. County of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009).

We agree with the district court that defendant Sgt. Arotzarena is entitled to qualified immunity because he could have reasonably believed in light of all the circumstances that his conduct did not violate the Constitution. Sgt. Arotzarena based his probable cause determination largely on the tip of a confidential informant, CI-21. When considering whether an informant's tip is sufficient to support probable cause, we employ a "totality of the circumstances" test, taking into account the informant's veracity or reliability, and his or her basis of knowledge. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The affidavit in support of Harvey's arrest warrant stated that Sgt. Arotzarena personally met with CI-21, who identified Harvey and several other individuals from a surveillance video and also from a lineup of DMV photos. *See United States v. Rowland*, 464 F.3d 899,

3

908 (9th Cir. 2006) ("[A]n agent's face to face encounter with an informant may bolster an informant's reliability because officers may perceive and evaluate personally an informant's mannerisms, expressions and tone of voice and because the informant knows that he may be tracked down and held accountable for false assertions."). Additionally, eyewitnesses from the San Pablo Market and the mother of one of the suspects corroborated some of these identifications and did not contradict any of them. *United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986) ("Because an informant is right about some things, he is probably right about other facts."). The magistrate judge found these facts sufficient to support a warrant for Harvey's arrest.

The record indicates that Sgt. Arotzarena omitted from his affidavit (1) that the surveillance video was blurry and (2) that CI-21 initially identified a different man as Harvey/Asad Bey before correcting himself. Had this information been included, it may have weakened Sgt. Arotzarena's support for probable cause. However, Sgt. Arotzarena's notes indicate that he also omitted the following facts that would have strengthened his argument for probable cause: (1) the intelligence unit of the Oakland Police Department confirmed that Harvey and the other suspects were associated with Your Black Muslim Bakery; (2) CI-21 told Sgt. Arotzarena that he formerly worked at the Bakery and was familiar with Harvey

4

and other associates of the Bakery; and (3) CI-21 identified Harvey by age, height, weight and distinguishing characteristics.

The totality of the circumstances known to Sgt. Arotzarena when he sought an arrest warrant provided a reasonable basis for believing that CI-21 was truthful and had a substantial familiarity with Harvey and the other individuals he identified. The information included in Sgt. Arotzarena's affidavit gave rise to at least disputable probable cause, and "we cannot say that a magistrate would not have issued the warrant if he had been told all that [Sgt. Arotzarena] knew about the informants." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997).

Sgt. Arotzarena also could reasonably believe that it was lawful to detain Harvey from December 27, 2005 (the date of his arrest) until January 3, 2006 (the date of his arraignment), despite Harvey's presentation of an alibi. Assuming that probable cause supported Harvey's initial arrest and detention, Sgt. Arotzarena was under no affirmative duty to further investigate Harvey's involvement in the incidents. *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) ("Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence,

whether the claim is based on mistaken identity or a defense such as lack of requisite intent."). Nevertheless, Sgt. Arotzarena did investigate Harvey's involvement after he was detained. He showed four eyewitnesses to the crimes the surveillance video of the San Pablo Market and a six-pack photo lineup, and two of the witnesses positively identified Harvey.[1] One of the witnesses specifically stated that Harvey was the individual who had held him up behind the counter. Although two of the witnesses did not identify Harvey, the post-detention investigations did not overwhelmingly demonstrate Harvey's innocence and provided some additional bases for believing he was involved in vandalizing the two Oakland liquor stores. Summary judgment in favor of Sgt. Arotzarena therefore was proper.

The district court properly granted summary judgment to former Oakland Police Chief Wayne Tucker, Deputy Chief Howard Jordan, Lt. Gier, Lt. Whitman and Officer J. Morris. Harvey has not set forth evidence that any of the individual defendants besides Sgt. Arotzarena were personally involved with the alleged

---

[1] These photo lineups were not unduly suggestive because only Harvey and one other individual were light-skinned African American men. We have held that minor ethnic variations between a suspect and other individuals in a photo lineup do not render a lineup constitutionally infirm. *See, e.g.*, *United States. v. Portillo*, 633 F.2d 1313, 1324 (9th Cir. 1980); *see also United States v. Nash*, 946 F.2d 679, 681 (9th Cir. 1991).

unlawful conduct or that they could be held liable in a supervisory capacity. *al-Kidd v. Ashcroft*, 580 F.3d 949, 965 (9th Cir. 2009).

The district court also properly granted summary judgment to the City of Oakland. Harvey has not shown that the City's failure to adequately train its employees amounted to a custom or policy giving rise to § 1983 liability. First, defendants have produced an officer training manual that explicitly instructs officers to "describe in details the facts showing probable cause for issuance of a Warrant." Second, even if the City does not have training materials specifically stating that officers should include information that undermines probable cause, there is no showing that Sgt. Arotzarena omitted any information because of a citywide custom or policy of leaving out such information. Harvey has not shown that any constitutional violation he suffered can be attributed to an official policy or custom of the City of Oakland. *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).

For similar reasons that we affirm the district court's grant of summary judgment to defendants on Harvey's § 1983 claims, we affirm the grant of summary judgment to defendants on Harvey's state law claims. *O'Toole v. Superior Court*, 44 Cal. Rptr. 3d 531, 549-50 (Cal. Ct. App. 2006) (explaining that officers are not liable for false arrest or false imprisonment under California law if

7

the officer "had reasonable cause to believe the arrest was lawful" (quoting Cal. Penal. Code § 847)).

**AFFIRMED.**

*Harvey v. City of Oakland*, No. 08-17620

NOONAN, Circuit Judge, dissenting:

We measure Dominique Arotzarena's liability by what he provided the magistrate who issued the arrest warrant for Harvey. *See United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. ) (en banc).

The foundation of the identification of suspects was a surveillance camera in the San Pablo Liquor Market. Arotzarena omitted the fact that the compact disc recording from the surveillance camera was not functioning at the time of the CI's interview. The recording, however, had been posted on the internet by a news broadcaster. Arotzarena did not note that the CI viewed the lower-quality internet version of the recording; that the film was blurry; or that the color resolution was low.

Arotzarena's affidavit declares: "On November 25, 2005, I met with a confidential informant. This CI had independent knowledge of this group." The immediate referent of "this group" is given in the preceding paragraph of the affidavit as the group of men who had entered the San Pablo Market. The affidavit provides no information as to how the CI had independent knowledge of "this group."

Arotzarena's affidavit goes on: "Through the video he [the CI] was able to

1

identify five people. He positively identified a person known to him as 'Jamal Bey,' 'Asad Bey' and 'Yusuf Bey.' He was also able to identify a light skin male black, maybe half Asian. He also identified an elderly male black."

The CI was then shown DMV photos and he matched them to the persons he had named in the video. And Asad Bey was said to be Demetrius Harvey. Nothing more appears in the affidavit as to Harvey.

The affidavit told the magistrate that a confidential informant had "positively" identified Harvey as a participant in the crime. The credentials of the CI were not given. No reason was provided as to how the CI should have particular information about "this group," i.e., those men who had invaded the San Pablo Market. No information was provided to the magistrate as to the quality of the film, the CI"s first misidentification of Harvey, and the limited profile of "Harvey" captured on the film. The magistrate, instead, was informed by Arotzarena's affidavit that the identification of Harvey was as positive as that made by the CI of four other men. A reasonable factfinder would be justified in finding that these facts constitute a reckless disregard for the truth. *See Butler v. Elle*, 281 F.3d 1014, 1026 (9th Cir. 2002).

Whether Arotzarena's misrepresentations were material to the determination of probable cause is a question for the court. Arotzarena's statement that the CI

2

had "independent knowledge of this group" was a material misrepresentation. Nothing in the affidavit, nothing in Arotzarena's "Case Notes" shows that the CI had knowledge of "this group." Although it is not mentioned in the affidavit, it was known to the police that the CI worked at Your Black Muslim Bakery and must therefore have known some men of the sixty who worked there. That knowledge did not translate into knowledge of the group of invaders of the liquor store.

Arotzarena's affidavit contained a second material misrepresentation: that the CI had "positively" identified each of the suspects, as though the same identification were made of each. Three of the men faced the camera. Their faces could be positively identified. "Harvey" was turned from the camera. The identification was half a guess. This guess followed the CI's first mistaken identification of a person with a very different appearance.

The police knew that the invaders worked at Your Black Muslim Bakery. It was tempting for Arotzarena to guess that the CI, who had worked there, knew the men he identified, but the guess had no foundation. It was also important to the police to net as many members of the mob as they could. Excepting these material misrepresentations, probable cause was absent for the arrest of Harvey. *See Crowe v. County of San Diego*, 593 F.3d 841, 870 (9th Cir. 2010).

3

It's a jury question whether in these circumstances Arotzarena acted reasonably or recklessly when he made the two misrepresentations to the magistrate, who was led to authorize the arrest of an innocent man. *See Butler*, 281 F.3d at 1024.

The damages Harvey might be awarded may not be great. Principle is what is at stake. Often the Fourth Amendment is invoked in criminal cases as a shield by those caught in criminal activity where overzealous law enforcement has overstepped a constitutional boundary. Here, the Fourth Amendment is invoked by innocence. The Constitution is the source of a vital right, whose vindication is no small victory for democratic government.

4